UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DECEDENT LOLOMANIA SOAKAI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No. 23-cv-00381-SK<br><br>**ORDER ON MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Regarding Docket Nos. 20, 59, 66 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendant the City of Oakland ("The City") and the motion for judgment on the pleadings filed by Defendant Wald Abdelaziz ("Abdelaziz"). Defendant Jimmy Marin-Coronel ("Marin-Coronel") filed a joinder to Abdelaziz's motion. The Court will refer to Abdelaziz and Marin-Coronel jointly as the "Individual Defendants" and will refer to all three defendants collectively as "Defendants." Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS the City's motion to dismiss and GRANTS IN PART and DENIES IN PART Abdelaziz's motion for the reasons set forth below. The Court FURTHER GRANTS Marin-Coronel's motion to join Abdelaziz's motion. (Dkt. No. 66.)

**BACKGROUND**

Plaintiffs bring claims under against the Individual Defendants and the City for the injuries they sustained from a "ghost chase." A "ghost chase" is an officer pursuit of a suspect in cars where "the officers do not activate their sirens and lights or radio in the chase to dispatch because their department prohibits such pursuits due to the risks to the lives of the suspect and innocent bystander[s]." (Dkt. No. 17 (Amended Compl.), ¶ 2.) The Individual Defendants sped after the suspect from a car rally "through highly populated and congested surface streets in Oakland at speeds in excess of 60 mph, and reports of even 100 mph." (*Id*., ¶¶ 1, 3.) As was foreseeable, the

1   Individual Defendants "caused the suspect to lose control of his vehicle and crash[] into cars and
2   motorcycles parked in front of a busy late night taco truck on . . . a main city" street.  The
3   suspect's car fatally injured Lolomania Soakai ("Decedent") and seriously injured the other
4   Plaintiffs.  (*Id*., ¶¶ 4-6.)

5   　　　　The Individual Defendants observed the chaos and injuries that their actions caused, but
6   they did not stop their car or summon emergency services.  (*Id*., ¶ 7.)  Instead, the Individual
7   Defendants "kept their sirens and lights off, their radios dead, and doubled-back to the scene when
8   they heard other police sirens responding.  When they returned to the scene, they pretended to
9   have just arrived and were overheard saying that they hoped that the driver had died in the crash."
10  (*Id*.)

11  　　　　As a result of the Individual Defendants' failure to provide or summon emergency medical
12  services, which they were required to do by their Police Department, Plaintiffs' injuries worsened
13  and one person, the Decedent, even died.  (*Id*., ¶ 24.)

14  　　　　In 2014, the City's Police Department "issued a policy that prohibited high-speed vehicle
15  pursuits except for a 'violent forcible crime' such as a rape, assault, murder, or robbery."  (*Id*., ¶
16  26.)  Additionally, the even where a high-speed car chase may be allowed, the officers are
17  required to "weigh 'the risks to the safety of officers, motorists, bystanders, and the public versus
18  the benefit to public safety.'"  (*Id*.)

19  　　　　After the Department issued this policy, a growing trend emerged among the Department's
20  officers to use "ghost chases" to avoid scrutiny for vehicle pursuits.  (*Id*., at ¶ 27.)  Ghost chases
21  became well-known and widespread within the Department.  (*Id*., ¶ 29.)  These chases have
22  caused other crashes, injuries and constitutional violations.  (*Id*.)

23  　　　　High-ranking supervisors and officials within the Department knew of the practice of
24  "ghost chases" but failed to take action to discipline, quell or abolish the practice.  (*Id*.)  The
25  Department's failure to discipline or quell the practice of ghost chases "proximately caused
26  Defendants Doe Officers to use the practice to chase, purposely cause the suspect to crash, and
27  injure Plaintiffs and Decedent."  (*Id*.)

28  　　　　Plaintiffs allege that the Individual Defendants engaged in the high-speed ghost chase with

an intent to harm the suspect and purposely caused him to crash. (*Id.*, ¶¶ 29, 37, 42; *see also* ¶ 21 (Individual Defendants "purposely caused the suspect to lose control of his vehicle and crash into cars and motorcycles parked in front of a busy late night taco truck"); ¶ 35 (alleging Individual Defendants purposely engaged in a high-speed chase "in an effort to make a suspect lose control, severely injure himself and die").)

Based on these allegations, Plaintiffs bring the following claims: (1) 42 U.S.C. § 1983 ("Section 1983") claim based on violation of due process under the fourteenth amendment against the Individual Defendants; (2) Section 1983 claim against the City; and (3) violation of the Bane Act, California Civil Code § 52.1 ("Bane Act") against all Defendants.

## ANALYSIS

### A.   Applicable Legal Standard on Motion to Dismiss.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. On a motion to dismiss under Rule 12(b)(6), the Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, a plaintiff must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Lieche, Inc. v. N.*

3

1    *Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

2    As a general rule, "a district court may not consider material beyond the pleadings in ruling
3    on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on*
4    *other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation
5    omitted). However, documents subject to judicial notice, such as matters of public record, may be
6    considered on a motion to dismiss. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir.
7    2011). In doing so, the Court does not convert a motion to dismiss to one for summary judgment.
8    *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other*
9    *grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). "The court need
10   not . . . accept as true allegations that contradict matters properly subject to judicial notice . . . ."
11   *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

12   **B.      Applicable Legal Standard on Motion for Judgment on the Pleadings.**

13   A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)
14   challenges the legal sufficiency of the claims asserted in the complaint. A Rule 12(c) motion is
15   "functionally identical" to a motion to dismiss pursuant to Federal Rule of Civil Procedure
16   12(b)(6). *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1023 (N.D. Cal 2008). "For
17   purposes of the motion, the allegations of the non-moving party must be accepted as true . . . ."
18   *See Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).
19   Although the standards for evaluating a motion to dismiss and a motion for judgment on the
20   pleadings are similar, a motion for judgment on the pleadings "is proper when the moving party
21   clearly establishes on the face of the pleadings that *no material issue of fact remains to be resolved*
22   *and that it is entitled to judgment as a matter of law.*" *Id*. (emphasis added).

23   **C.      Defendants' Motions.**

24          **1.      Purpose or Intent to Harm.**

25   Both the City and Abdelaziz move on the grounds that Plaintiffs fail to sufficiently allege
26   an intent to harm *them* as bystanders, which they argue is necessary to Plaintiffs' Section 1983
27   claim premised on a fourteenth amendment due process violation.

28   "The Due Process Clause is simply not implicated by a *negligent* act of an official causing

4

unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original). Instead, to bring a Section 1983 claim for a fourteenth amendment violation during a high-speed chase, Plaintiffs must allege "a purpose to harm unrelated to the legitimate object of arrest" to "satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *County of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998). This "much higher standard of fault than deliberate indifference" is required because "[a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers, or bystanders." *Id*. at 852-53.

This standard applies not only to suspects being chased by police, but also to innocent bystanders who are injured or killed from the high-speed chase. *Osnossian v. Block*, 175 F. 3d 1169, 1171-72 (9th Cir. 1999) ("As we read [*Lewis*], if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, irrespective of who might be harmed or killed as a consequence of the chase."); *see also Bingue v. Prunchak*, 512 F.3d 1169, 1175-77 (9th Cir. 2008) (holding *Lewis* "'intent to harm' standard applies categorically to Fourteenth Amendment due process claims arising out of all high-speed police chases").

Putting aside for the moment at whom the purpose to harm must be directed (suspects or bystander plaintiffs), the parties do not dispute this legal standard. The City, but not Abdelaziz, concedes that Plaintiffs sufficiently allege an intent to harm the Individual Defendants. Upon review of the Amended Complaint, the Court finds that Plaintiffs sufficiently allege that the Individual Defendants engaged in the high-speed car chase of the suspect without any lights or sirens with the intent to cause the suspect to crash and seriously injure him. (*See* Dkt. No. 17, ¶¶ 21, 29, 35, 37, 42.) In addition, the fact that the Individual Officers left the scene without arresting the suspect after the chase ended raises a strong inference that they did not engage in the high-speed chase for a legitimate law enforcement purpose – to catch and arrest the suspect.

Next, both the City and Abdelaziz argue Plaintiffs must allege that the Individual Defendants had an intent to injure them, as opposed to the people the Individual Defendants were

1    chasing, and that the Amended Complaint fails to do so. However, there is no binding authority

2    stating that the intent to harm must be directed at innocent bystanders. Upon review of the cases

3    analyzing *Lewis* in which bystanders were injured or killed, the Court finds that, if Plaintiffs allege

4    a purpose to harm *anyone* unrelated to the legitimate object of arrest, then they have satisfied the

5    element of arbitrary conduct shocking to the conscience for their claim for violation of their

6    Fourteenth Amendment rights.

7        The Court only found a few cases where plaintiffs sufficiently alleged such an intent to

8    harm and in which bystanders were injured. In those cases, it was sufficient for the plaintiffs to

9    allege an intent to harm a suspect, even if innocent bystanders were injured and brought the

10   lawsuit. *See*, *e.g.*, *Johnson v. Baltimore Police Dep't.*, 452 F. Supp. 3d 283 (D. Md. 2020);

11   *Simmons v. Baltimore City Police Dep't.*, 2021 WL 3418840, at *14 (D. Md. Aug. 5, 2021);

12   *McGowan v. County of Kern*, 2018 WL 2734970 (E.D. Cal. June 7, 2018).

13       In *Johnson*, the plaintiffs plausibly alleged that the defendants, the officers, were driven by

14   an improper or malicious motive against the suspects when they engaged in a high-speed chase.

15   *Johnson*, 452 F. Supp. 3d at 301-02. The court specifically rejected the argument that the

16   plaintiffs had to allege an intent to harm the innocent bystanders who were injured. *Id*. at 302.

17   The court held that "the weight of authority post-*Lewis* holds that the 'intent to harm' standard

18   applies to substantive due process claims arising out of police chases, whether the claim is brought

19   by the target of the chase, or an innocent bystander." *Id*. The court noted that in no cases "did a

20   court reject a bystander's substantive due process claim because the police did not intend to harm

21   *them*; rather, the claims all failed because of the claimant's inability to demonstrate that the

22   relevant officer had [an] intent to harm the target of the pursuit." *Id*. at 303 (emphasis in original).

23   The court reasoned that "[a]n officer's actions motivated by an intent to harm a suspect are no less

24   conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an

25   innocent third party." *Id*.

26       In *McGowan*, the court held that the requisite intent to harm for a claim for violation of the

27   Fourteenth Amendment due process rights could be inferred in the right circumstances, including

28   an intentional misuse of police vehicles. 2018 WL 2734970, at *9 (finding plaintiff could allege

6

purpose to harm where officer acted with actual knowledge or virtual certainty that his actions would cause harm). The court in *McGowan* found it would not be futile for the plaintiffs, who were injured as innocent bystanders, to allege a claim for violation of their Fourteenth Amendment rights based on a dangerous high-speed chase with no legitimate law enforcement objective. *Id.*, 2018 WL 2734970, at *7. Notably, the intent to harm would have been directed at the *suspect*, not the injured bystanders. *Id.*, 2018 WL 2734970, at *9-10 (finding plaintiffs' allegations sufficiently alleged that the officer acted with a purpose to harm where he "had no 'legitimate law enforcement objectives' to engage in the manner he did") (quoting *A.D. v. California Highway Patrol*, 712 F.3d 446, 456-57 (9th Cir. 2013)).

In *Simmons*, the court found that the innocent bystander plaintiffs had "adequately alleged the type of conscience-shocking behavior that *Lewis* requires" because they alleged the officers "were intentionally misusing their vehicles by engaging in a pursuit [of a suspect] that was not necessary in its purpose nor in the manner that it was executed." *Simmons*, 2021 WL 3418840, at *14.

The Court finds these cases well-reasoned. It is rare that police officers act with an intent to harm suspects. *Porter v. Osborn*, 546 F.3d 1131, 1141 (9th Cir. 2008) ("*Lewis* contemplates such rare situations where the nature of an officer's deliberate physical contact is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill.") (internal quotation marks and citation omitted). It is even more exceedingly rare that police officers would have an intent to harm innocent bystanders who happen to be in the vicinity of the police officers' actions. In effect, by requiring an intent to harm *bystanders*, as opposed to showing conduct which shocks the conscious, courts would essentially be prohibiting bystanders from bringing clams for violation of their Fourteenth Amendment rights. Additionally, if a plaintiff can allege, and eventually prove, that an officer acted with an intent to harm *anyone*, the officer should be liable for the full extent of her or his unconscionable conduct, including hurting an innocent bystander. *Johnson*, 452 F. Supp. 3d at 303 ("An officer's actions motivated by an intent to harm a suspect are no less conscience shocking, whether the resulting harm accrues to the intended target (the suspect), or an innocent third party.").

To support its argument to the contrary that the intent must be directed at the *bystanders*, the City relies on the following language from *Moreland v. Las Vegas Metropolitan Police Department*, 159 F.3d 365, 373 (9th Cir. 1998): "Appellants have failed to state a viable substantive due process claim because these matters are not material to the controlling question of whether [the officer] acted with a purpose to harm [the bystander] that was unrelated to his attempt to stop the [suspect] in the parking lot from endangering others." However, the fact that the Ninth Circuit framed the question in this manner does not mean that in all situations, plaintiffs must show an intent to harm directed at *bystanders*. In *Moreland*, notably, it was undisputed that the officers were entitled to use deadly force against the suspect to stop the gunfight occurring in the parking lot. *Id*. Thus, because the officers were entitled to use deadly force, the only way a bystander could succeed in bringing a claim for violation of her or his Fourteenth Amendment rights would be to show an intent to harm the bystander. The court found that the bystanders could not state a claim "because the officers were responding to the extreme emergency of public gunfire and did not intend to commit any harm unrelated to the legitimate use of force necessary to protect the public and themselves." *Id*.

Similarly, in *Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 950 (E.D. Cal. 2011), another case on which the City and Abdelaziz rely, the officer had reason to believe that the suspect was armed, dangerous, and a threat to at least one other person at the party. Additionally, the court found that the officers were responding to a "rapidly evolving, fluid, and dangerous predicament." *Id*. at 949 (citation omitted). Again, because the officers were entitled to use deadly force against the suspect, the only way a bystander could succeed in bringing a claim would be to show an intent to harm the bystander. However, in *Rodriguez*, the court found that was no real dispute that the bystander was injured incidentally. *Id*. at 950.

Also, in *Claybrook v. Birchwell*, 199 F. 3d 350 (6th Cir. 2000), the officers used deadly force against the suspect who was shooting at them and inadvertently hit the bystander with a bullet. *See also Childress v. City of Araphaho*, 210 F.3d 1154 (10th Cir. 2000) (officers inadvertently shot bystander plaintiffs when using deadly force to stop prison escapees). In these cases, the officers were responding to rapidly evolving situations and were justified in using

deadly force against the *suspects*. As noted above, in such circumstances where officers intend to use force against a suspect and are justified by legitimate law enforcement purposes in doing so, the bystander's only chance of bringing a claim for violation of her or his Fourteenth Amendment right is to show an intent to harm directed at the bystander.

In none of the cases upon which the City and Abdelaziz rely, were there any allegations that the officers acted with an intent to harm the suspects unrelated to legitimate law enforcement objectives. *See Claybrook*, 199 F. 3d 350; *Childress*, 210 F.3d 1154; *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150 (10th Cir. 2001); *Rodriguez*, 819 F. Supp. 2d 937, *Suit v. City of Folsom*, 2016 WL 6696060, at *1, 3 (E.D. Cal. Nov. 15, 2016). Under Ninth Circuit authority, where police officers are justified in their conduct, "that justification insulates the officer[s] from constitutional attack, irrespective of who might be harmed or killed as a consequence of the" officers' conduct. *Onossian v. Block*, 175 F.3d 1169, 1171 (9th Cir. 1999). In other words, if the plaintiffs did not allege the police officers acted with intent to harm anyone unrelated to legitimate law enforcement objectives, then the bystanders' claims would necessarily fail.

The Court finds that allegations that the Individual Defendants were acting with an intent to harm anyone unrelated to a legitimate law enforcement objective, causing the harm to Plaintiffs, is sufficient to allege a violation of the fourteenth amendment. Because Plaintiffs have done so, the Court DENIES the City's and Abdelaziz's motions on this ground.

**2.   Failure to Call for Medical Assistance.**

Ordinarily, police officers cannot be "held liable under § 1983 for an injury inflicted by a third party." *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013). However, there are two exceptions to this general rule, and Plaintiffs rely on one of these: the "danger creation" exception. *Id*. The danger creation exception applies where officers or government "affirmatively placed the [victim] in a position of danger." *Id*. (quoting *Wood v. Ostrander,* 879 F.2d 583, 589-90 (9th Cir.1989)). The relevant question is whether "the affirmative actions of the official created or exposed an individual to a danger which he or she would not have otherwise faced." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (cleaned up).

To state a claim based on state-created-danger, Plaintiffs must allege the following three

9

elements: (1) the Individual Defendants "affirmative actions created or exposed [them] to an actual, particularized danger that [they] would not otherwise have faced"; (2) "the injur[ies they] suffered [were] foreseeable; and (3) " the officers were deliberately indifferent to the known danger." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The Court finds that Plaintiffs allege all three elements. The Individual Defendants drove dangerously fast, at speeds up to 100 miles per hour, through highly congested streets, with their lights and sirens off, with the alleged intent of causing the suspect to crash. The Individual Defendants' affirmative actions exposed Plaintiffs to an actual, particularized danger that they would not have otherwise faced. It was certainly foreseeable that, if the suspect hit others when he crashed, others would be injured.

Moreover, the Individual Defendants were indifferent to the known danger. They saw the crash they allegedly intended to cause and were aware that innocent bystanders were injured when the suspect crashed into cars and motorcycles parked in front of a busy taco truck on a main city street. (Dkt. No. 17, ¶¶ 21, 23.) The Individual Defendants did not report the crash or call for medical assistance and instead left the scene and did not return until they heard other police sirens responding to the scene. (*Id.*, ¶ 23.) The Individual Defendants pretended to arrive for the first time and were overheard mentioning that they were satisfied that the suspect appeared to be injured and that they hoped that he had died in the crash. (*Id.*)

Abdelaziz tries to characterize the Individual Defendants' conduct as simply engaging in a legitimate high-speed chase. But even if they had engaged in a legitimate high-speed chase and had arrested the suspect, Abdelaziz points to no cases where officers incidentally caused an accident with no bad intent and did not summon medical assistance for those injured.

Finally, Abdelaziz argues that Plaintiffs fail to sufficiently allege that the Individual Defendants' conduct was directed towards *Plaintiffs*, as opposed to the suspect. In reliance on *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023), he argues that the officers' conduct must be directed specifically at *Plaintiffs*. However, in *Sinclair*, the Ninth Circuit merely found that where the accused conduct was directed towards an entire section or zone of the city and affected all who lived or passed through that area equally, the representative of the individual killed in that area could not state a claim under the Fourteenth Amendment. Moreover, the Ninth Circuit

1    clarified that while generalized dangers exposing a broad swath of the public, as in *Sinclair*,
2    cannot support a state-created-danger claim, the danger can be sufficiently particularized "if it is
3    directed towards a group rather than an individual." *See Polanco v. Diaz*, 76 F.4th 918, 927 (9th
4    Cir. 2023).  In *Polanco*, the court held that the danger was particularized when the prison officials
5    transferred 122 inmates into the prison without testing them for COVID-19, thereby exposing the
6    prison guards and inmates to the dangers of COVID-19.  *Id*.  The prison guards and inmates at the
7    prison were a "discrete and identifiable group." *Id*.  Therefore, the court held that the family of a
8    prison guard who had been exposed to and died of COVID-19 stated a claim based on a state-
9    created-danger.  *Id*.

10   Plaintiffs here are an even smaller "discrete and identifiable group" who were injured from
11   the crash the Individual Defendants allegedly intentionally caused.  Accordingly, the Court
12   DENIES Abdelaziz's motion to dismiss Plaintiffs' claim under Section 1983 claim against the
13   Individual Defendants on this ground.

14   **3.    Qualified Immunity.**

15   Abdelaziz argues that he is entitled to qualified immunity on Plaintiffs' claims for violation
16   of their Fourteenth Amendment rights.  However, his arguments are premised on arguments above
17   that the Court rejected – that the intent to harm must be directed at the bystanders and that the
18   Individual Defendants had no obligation to render or procure medical aid because they did not
19   create the danger.  The Court finds that, based on the facts alleged by Plaintiffs, the Individual
20   Defendants are not entitled to qualified immunity.  *See Porter*, 546 F.3d at 1140 ("whether Osborn
21   is entitled to qualified immunity . . . turns on whether the Porters can present facts . . . that would
22   justify a jury finding that Osborn acted with an unconstitutional purpose to harm").  Therefore, the
23   Court DENIES Abdelaziz's motion on this ground.

24   **4.    *Monell* Claim Against the City.**

25   The City moves to dismiss the Section 1983 claim against it on the grounds that Plaintiffs
26   have insufficiently pled facts to support liability against a municipality under *Monell v. New York*
27   *Dept. of Soc. Serv.*, 436 U.S. 658 (1978).  Municipalities cannot be found liable under Section
28   1983 on a *respondeat superior* theory.  *Monell*, 436 U.S. at 694.  Municipal liability can be

11

imposed only for injuries inflicted pursuant to an official governmental policy or custom. *See Monell v. N.Y. Dept. of Soc. Serv.*, 436 U.S. 658, 690-94 (1978). A city can be found liable when the execution of a policy, whether made by its lawmakers or those whose acts can be said to represent official policy or custom of the city, inflicts the injury. *Id.* at 694. In order to state a *Monell* claim, a plaintiff must allege facts sufficient to demonstrate: "(1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the [municipality] is responsible for that violation." *Collins v. City Harker Heights*, 503 U.S. 115, 120 (1992).

There are three different theories of municipal liability: (1) official policies or established customs that inflict constitutional injury; (2) acts of omission, such as the failure to train, when the omissions amount to the local government's own official policy; or (3) if the individual who committed the constitutional tort was an official with final policy-making authority, or an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Plaintiffs do not allege or cite to any formal policy. In the absence of a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Id*. A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee. *Id*. ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *see also Lawman v. City & Cty. of San Francisco*, 159 F. Supp. 3d 1130, 1144 (N.D. Cal. 2016).

Plaintiffs allege that the City issued a policy prohibiting high-speed chases except for violent crimes in 2014. (Dkt. No. 17, ¶ 26.) Plaintiffs allege that afterward, a "growing trend" emerged among City police officers to use ghost chases to avoid scrutiny for engaging in high-speed chases. (*Id*., ¶ 27.) Plaintiffs then recite statistics on officer collisions, but do not tie any of the statistics to ghost chases. (*Id*., ¶¶ 27, 28.) Plaintiffs allege that ghost chases have become

12

well-known and widespread within the Oakland Police Department and that high-ranking supervisors and officials have known about the practice but did not take action to quell or abolish the practice. (*Id.*, ¶ 29.)

It is debatable whether Plaintiffs have sufficiently alleged a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino*, 99 F.3d at 918. Regardless, Plaintiffs' *Monell* claim suffers from another defect. Plaintiffs must allege that the longstanding practice or custom was the "moving force" behind Plaintiffs' alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The problem Plaintiffs face is that the constitutional violation they allege is that the Individual Defendants chased the suspect *with an intent to harm him*. It is the intent to harm which shocks the conscience. Although engaging in a high speed chase without lights or sirens is incredibly dangerous, if the Individual Defendants had done so for a legitimate law enforcement purpose without any intent to harm, Plaintiffs would not have alleged a claim for violation of their Fourteenth Amendment rights. Plaintiffs have not alleged any policy or practice that Oakland police officers intend to harm suspects. Therefore, the Court GRANTS the City's motion to dismiss the Section 1983 claim against it.[1] While it does not appear likely that Plaintiffs could plead facts to support such a claim, the Court will provide Plaintiffs with one opportunity to amend their complaint to add facts for their *Monell* claim.

### 5. Bane Act.

Both the City and Abdelaziz move to dismiss Plaintiff's Bane Act claim. The Bane Act states in relevant part that a person is liable when he or she:

> [I]nterferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any United States, or of the rights secured by the Constitution or laws of this state.

Cal. Civ. Code § 52.1(b). The Bane Act "does not extend to all ordinary tort actions." *Venegas v.*

---

[1] Plaintiffs argue in opposition to the City's motion that the City failed to move to dismiss the *Monell* claim to the extent it is premised on the Individual Defendants' failure to summon medical aid. (Dkt. No. 26 at p.12.) However, Plaintiffs' *Monell* claim is only premised on ghost chases. (Dkt. No. 17, ¶¶ 41-43.)

1    *Cty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  It requires a showing of specific intent.  *Cornell*

2    *v. City and Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017) (a plaintiff must demonstrate

3    "the arresting officer had a specific intent to violate the arrestee's right to freedom from

4    unreasonable seizure").  The statute "require[s] an attempted or completed act of interference with

5    a legal right, accompanied by a form of coercion."  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334

6    (1998).  Plaintiffs have not alleged that the Individual Defendants coerced them.  Therefore, the

7    Court GRANTS the City's and Abdelaziz's motions on the Bane Act claim.[2]

8        Abdelaziz argues that Plaintiffs should not be given leave to amend because he is immune

9    from state law claims, including the Bane Act, pursuant to California Vehicle Code § 17004.  That

10   statute provides:  "A public employee is not liable for civil damages on account of personal injury

11   to or death of any person or damage to property resulting from the operation, in the line of duty, of

12   an authorized emergency vehicle while responding to an emergency call or when in the immediate

13   pursuit of an actual or suspected violator of the law . . . ."  However, Plaintiffs allege that the

14   Individual Defendants were not operating their car in the line of duty to pursue a suspect to arrest

15   him.  Instead, they allege that the Individual Defendants were misusing their patrol car for an

16   improper purpose – trying to harm the suspect.  Abdelaziz does not cite to any cases where

17   Vehicle Code § 17004 has been applied to bar claims based on an officer's intentional misuse of

18   their vehicle.  In the absence of such authority, the Court will not preclude Plaintiffs from seeking

19   to allege additional facts to state a claim under the Bane Act.  Therefore, the Court will provide

20   Plaintiffs with leave to amend their Bane Act claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS the City's motion to dismiss and GRANTS IN PART and DENIES IN PART Abdelaziz's motion for judgment on the pleadings.  Pursuant to these motions, the Court DISMISSES Plaintiffs' Section 1983 claim against the City and their Bane Act claim against all Defendants.  The Court DENIES the motions as to Plaintiffs' Section 1983 claim against the Individual Defendants.

---

[2] Because Marin-Coronel joined in Abdelaziz's motion, the Court dismisses the Bane Act claim with respect to him as well.

Plaintiffs have one opportunity to allege additional facts to support their Section 1983 claim against the City and their Bane Act claim.  Plaintiffs shall file their amended complaint, if they elect to amend, by no later than December 20, 2023.

**IT IS SO ORDERED**.

Dated: November 28, 2023



SALLIE KIM
United States Magistrate Judge